IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____

MARIE BROWN o/b/o A.B.                    )
                                          )
          Plaintiff,                      )
                                          )
          v.                              )          Civil Action No. WGC-08-2760
                                          )
MICHAEL ASTRUE, Commissioner              )
Social Security Administration            )
_____)

## MEMORANDUM OPINION

Marie Brown ("Mrs. Brown" or "Plaintiff"), on behalf of her son, A.B., brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying A.B.'s claim for child's Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 – 1383d. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.[1]  *See* Document Nos. 2, 5-6.  Pending before the Court are Plaintiff's Motion for Summary Judgment or, in the alternative, Motion for Remand (Document No. 23) and Defendant's Motion for Summary Judgment (Document No. 28).   No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2010).  For the reasons set forth below, Plaintiff's alternative Motion for Remand will be granted.

1. **Background.**

Mrs. Brown protectively filed an application for child's SSI on behalf of her son A.B. on May 7, 2003, alleging disability since May 7, 2003, due to emotional problems and attention

_____
[1] The case was subsequently reassigned to the undersigned.  *See* Document No. 29.

deficit hyperactivity disorder ("ADHD").  R. at 82-85, 94.  The application was denied initially on

September 1, 2003.  R. at 46-48.  On October 21, 2003 Mrs. Brown requested reconsideration,

R. at 49-50, and on March 26, 2004, the application was denied again, R. at 51-53.  On June 6,

2004 Mrs. Brown requested a hearing.  R. at 54-55.  On August 4, 2005 an Administrative Law

Judge ("ALJ") convened a hearing.  Mrs. Brown and her son testified and were represented by

counsel.  R. at 24-43.  In the September 19, 2005 decision the ALJ found A.B.'s ADHD and

borderline intellectual functioning do not meet, medically equal or functionally equal the

severity of any impairment listed and therefore determined A.B. is not disabled.  R. at 22-23.

Mrs. Brown requested a review of the ALJ's decision.  R. at 11.  On March 1, 2006 the Appeals

Council denied Mrs. Brown's request for review, R. at 6-8, making the ALJ's determination the

Commissioner's final decision.

Thereafter on April 21, 2006 Mrs. Brown filed a lawsuit in the United States District

Court for the District of Maryland.  R. at 278-79.  On February 26, 2007 United States

Magistrate Judge Jillyn K. Schulze granted the Consent Motion to Remand, filed by the

Commissioner, and remanded the case to the Commissioner for further administrative

proceedings.  R. at 281.  In the Order of May 3, 2007 the Appeals Council vacated the March 1,

2006 final decision of the Commissioner and remanded the case to the ALJ.  The Appeals

Council identified the following omissions in the ALJ's decision or the record.

> The decision does not adequately address the claimant's
> credibility.  The Administrative Law Judge found that the claimant
> was credible only to the extent that his complaints were
> supported by the evidence of record summarized in the decision
> (TR 23), however, the relevant factors in evaluating credibility
> were not explicitly discussed or considered (see 20 CFR §
> 416.429(c)(3)).   The Administrative Law Judge should have
> addressed the testimony provided by the claimant's mother,

Mari[e] Brown (TR 32-42) as required by 20 CFR § 416.924a(a)(2)(i) and SSR 96-7p.

The claimant was treated by Dr. Hammond for emotional problems and attention deficit hyperactivity disorder but the treatment records are not included in the record. The record also does not include notes on bi-weekly therapy the claimant's mother testified about at the hearing (TR 34). Gaps in the treatment records from Contemporary Therapeutic Services Inc. should be resolved by requesting the bi-weekly treating records and any other records available (TR 35, 220, May 2004, 227, June 2005). The record does not contain any primary care physician records of Dr. Carrington after October 2003 (TR 199, 221).

With respect to the first of the six domains, acquiring and using information the Administrative Law Judge found that [t]he claimant had less than marked limitations (TR 21)[,] but he did not discuss and analyze the results of the teacher questionnaires (TR 109-116, 134-142) which document serious problems. The Administrative Law Judge did not evaluate the reports from the claimant's teachers which document serious problems in attending and completing tasks (TR 111, 137, 159-164). In the domain of interacting and relating with others the Administrative Law Judge found that the claimant had less than marked limitations but did not evaluate a number of reports showing significant discipline problems.

R. at 285-86. The Appeals Council directed the ALJ to take the following actions upon remand.

Evaluate all medical opinions of record and the claimant's subjective complaints (in accordance with 20 CFR § 416.929, SSR 96-7p and 96-8p). The Administrative Law Judge will address and discuss the testimony of the claimant's mother in accordance with 20 CFR § 416.924 and SSR 96-7p.

Will in accordance with 20 C.F.R. §§ 416.912(e) and 416.927(c)(3) contact the claimant's treating physicians Dr[]. Hammon[d] and Dr. Carrington and attempt to obtain any treatment records that may be available. The Administrative Law Judge will attempt to obtain any further records that may be available from Contemporary Therapeutic Services Inc. and the records of the biweekly sessions noted by claimant's mother (TR 34). The Administrative Law Judge will give full consideration to the claimant's treating physicians and other opinion evidence in

accordance with 20 CFR § 416.927(d) and Social Security Rulings 96-2p, 96-3p, and 96-5p.  The Administrative Law Judge will consider and explain the weight given to the opinions of all treating and examining sources.

Will fully evaluate the teacher responses to questionnaires and academic progress reports in the record.

R. at 286.  Finally the Appeals Council directed the ALJ to offer the claimant the opportunity for a hearing, take any further steps to complete the administrative record and issue a new decision.  *Id.*

A hearing was subsequently convened on November 14, 2007.  R. at 269-76.  That hearing was continued to obtain a psychiatric evaluation.  R. at 234.  The continued hearing occurred on May 5, 2008.  R. at 251-68.

In the August 19, 2008 decision the ALJ found A.B. has not been disabled, as defined in the Social Security Act, since May 7, 2003.  R. at 250.  The administrative record does not contain either a request for review of the ALJ's decision by Mrs. Brown or a Notice of Appeals Council Action denying the request for review.  Mrs. Brown apparently did not request such a review.  *See* Mem. Law Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 2.  "If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand."  20 C.F.R. § 416.1484(d) (2008).

Moreover the Appeals Council did not elect to assume jurisdiction of this case.  "Any time *within 60 days after* the date of the decision of the administrative law judge, the Appeals Council may decide to assume jurisdiction of your case *even though no written exceptions have been filed*."  *Id.* § 416.1484(c) (emphasis added).  Because Mrs. Brown apparently did not seek a

review of the ALJ's August 19, 2008 decision and further, because the Appeals Council did not assume jurisdiction of the case, the ALJ's August 19, 2008 decision became the final decision of the Commissioner as of October 19, 2008. *See* Compl. ¶ 3 (Document No. 1).

2. **ALJ's Decision.**

The ALJ evaluated A.B.'s claim for child's SSI using the sequential evaluation process set forth in 20 C.F.R. § 416.924. This sequential evaluation process is a three step process. Step one is whether the claimant is doing substantial gainful activity. If the claimant is doing substantial gainful activity, the Social Security Administration will not review the claim further. If the claimant is not doing substantial gainful activity, then the Social Security Administration proceeds to step two, whether the claimant's impairment or combination of impairments is severe. If the claimant's impairment or combination of impairments is not severe, the Social Security Administration will not review the claim further. If the impairment or combination of impairments is severe, then the Social Security Administration proceeds to step three, whether the impairment or combination of impairments meets, medically equals or functionally equals a listing.

In the September 19, 2005 decision the ALJ found at step one that A.B. has not engaged in substantial gainful activity and at step two found A.B.'s ADHD and borderline intellectual functioning are severe impairments within the meaning of 20 C.F.R. § 416.924(c) and Social Security Rulings 96-3p and 85-28 "because the child has more than slight abnormalities and more than minimal functional limitations." R. at 16. At step three the ALJ found the evidence does not establish A.B.'s impairments meet or medically equal listed impairments, specifically, Section 112.11 for ADHD and Section 112.05 for borderline intellectual functioning. R. at 17.

The ALJ then proceeded to determine whether A.B's impairments functionally equal the listings as well as the 12 month duration requirement. To make this finding the ALJ reviewed the six domains of functioning, specifically, (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In evaluating the claimant's ability to function in each domain the Social Security Administration will consider information in answering the following six questions.

(i) What activities are you able to perform?

(ii) What activities are you not able to perform?

(iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?

(iv) Where do you have difficulty with your activities-at home, in childcare, at school, or in community?

(v) Do you have difficulty independently initiating, sustaining, or completing activities?

(vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

*Id.* § 416.926a(b)(2)(i)-(vi). An impairment functionally equals a listing-level severity if it is determined that a claimant has *marked* limitations in two domains or an *extreme* limitation in one domain. *Id.* § 416.926a(d).

After reviewing the evidence the ALJ found A.B. had *less than marked* limitations in (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, and (v) caring for yourself. The ALJ determined A.B. had *no* limitations in (vi)

health and physical well-being and (iv) moving about and manipulating objects.  R. at 21. Because A.B. did not have at least *marked* limitations in two domains or an *extreme* limitation in one domain, A.B.'s impairments did not functionally equal the severity of listed impairments. The ALJ therefore concluded A.B. is not disabled.  R. at 23.

After the remand and two subsequent hearings the ALJ issued a decision on August 19, 2008.  At step one the ALJ found A.B. has not engaged in any substantial gainful activity and at step two the ALJ found A.B. has two severe impairments:  ADHD and borderline intellectual functioning.  R. at 236.  At step three the ALJ found A.B.'s impairments do not meet or medically equal listed impairments, specifically Section 112.11 for ADHD and Section 112.05 for borderline intellectual functioning.  R. at 241-42.

The ALJ then proceeded to determine whether A.B.'s impairments functionally equal the severity of listed impairments.  The ALJ considered the six domains of functioning, and further, for each domain, considered six specific questions pursuant to 20 C.F.R. § 416.926a(b)(2)(i)-(vi). The ALJ found A.B. has *less than marked* limitations in (i) acquiring and using information, (ii) attending and completing tasks and (iii) interacting and relating with others.  For the other three domains — (iv) moving about and manipulating objects, (v) caring for yourself and (vi) health and physical well-being — the ALJ found A.B. had *no* limitations.  R. at 245-49.  Because A.B. did not have at least *marked* limitations in two domains or an *extreme* limitation in one domain, A.B.'s impairments did not functionally equal the severity of listed impairments.  The ALJ therefore concluded A.B. is not disabled.  R. at 249-50.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion**.

Plaintiff challenges the ALJ's determination that A.B.'s impairments were not functionally equivalent to listed impairments. Plaintiff raises concerns about the ALJ's evaluation of three of the six domains of functioning: (i) acquiring and using information, (ii) attending and completing tasks and (v) caring for yourself. The Court addresses the arguments below.

*Acquiring and using information*

With regard to this domain of functioning the ALJ wrote,

> During the claimant's early years of school he had serious difficulties because of his problems with concentration and focus. He was not at grade level and required special education.

However, he made sufficient progress that he was promoted each year. Currently the claimant continues to receive special education and is in a small group setting at school. He still has problems focusing and is easily distracted. He has difficulty following directions and has problems with concentration and memory. His reading and writing skills are at a significantly lower level than his peers. However, he has made significant improvement in the school year just past. Although he had Ds in reading and written communication, he received Cs (average) in mathematics, science, social studies and music. In art and physical education he received a grade of A. His limitation in acquiring and using information is less than marked.

R. at 245-46.

Plaintiff argues the ALJ did not recognize that despite A.B.'s alleged improvement, A.B. remains significantly below grade level in many areas of function. Plaintiff further asserts the ALJ failed to evaluate pertinent evidence which contradicted the ALJ's conclusions.

The Commissioner contends the ALJ thoroughly reviewed and properly evaluated all evidence. Regarding Plaintiff's assertion that the ALJ did not evaluate pertinent evidence from A.B.'s academic record, the Commissioner asserts that an ALJ is not required to discuss or cite every piece of evidence in the administrative record. "Moreover, an ALJ does not rely exclusively on academic records in determining the severity of a child's limitations in the domain of 'Acquiring and using information.' SSR 09-3p, 2009 WL 396025, at *3." Def.'s Mem. at 17.

The Commissioner cites as authority a Social Security Ruling ("SSR") which was promulgated *after* the ALJ's decision of August 19, 2008 and *after* the ALJ's decision became the final decision of the Commissioner on October 19, 2008. Social Security Ruling 09-3p, *Determining Childhood Disability — The Functional Equivalence Domain of "Acquiring and Using Information"* is dated **February 17, 2009**. This Policy Interpretation Ruling was **not** in effect

when either the ALJ issued his August 19, 2008 decision nor when that decision became the final decision of the Commissioner on October 19, 2008 and therefore the Court **will not consider** this SSR or the companion SSRs.

The *acquiring and using information* domain assesses how well a child acquires or learns information and how the child uses the information he learns. The records and information the ALJ considered in this case span a period of A.B.'s life from age 6 (reports from 1st grade) to age 12 (A.B.'s age when he appeared before the ALJ at the May 5, 2008 hearing; R. at 253).

The Social Security Regulations provide age group descriptors for the *acquiring and using information* domain. The following descriptor applies to school age children (age 6 to attainment of age 12).

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

The ALJ found A.B. has two severe impairments: ADHD and borderline intellectual functioning. With regard to medical evidence the ALJ summarized the reports from Mark L. Paris, Ph.D. (March 13, 2004), Dr. Reginald Biggs (January 12, 2007) and Dr. Shakuntala Dhir (February 7, 2008).

Below is a summary of these doctors' evaluations.

| Doctor | Paris | Biggs | Dhir |
|---|---|---|---|
| *A.B.'s age* | 8 years old | 10 years old[2] | 11 years old |
| *Behavioral Observations* | very little sign of attentional difficulties & only near the end of testing;<br><br>speech: clear, coherent & unpressured;<br><br>no indication of hyperactivity | significant depression w/ periods of irritability & feeling angry at times;<br><br>speech: monotone & low in volume;<br><br>speaks little; rarely smiles | not hyperactive;<br><br>good language comprehension & expression;<br><br>unable to do serial 4's;<br><br>unable to recall any objects after 5 minutes;<br><br>speech: regular in rate & rhythm |
| *Test Results* | WISC-III<br>Verbal IQ = 79<br>Performance IQ = 77<br>Full Scale IQ = 76 | N/A | N/A |
| *Analysis of Test Results* | Significant deficits in most areas of intellectual functioning to include fund of general knowledge, vocabulary, verbal concept formation & social judgment, attention to detail, non-verbal concept formation, spatial integration & eye-hand coordination. Measures of mental | N/A | N/A |

[2] In Dr. Biggs' medical record, he misidentifies A.B.'s year of birth, listing 1993 instead of 1996. *See* R. at 322.

|  |  |  |  |
| --- | --- | --- | --- |
|  | calculation & spatial visualization w/in normal limits. |  |  |
| *Impact of Symptoms* | N/A | N/A | poor social functioning, poor academic performance; concentration is poor. |
| *Diagnosis* | Axis I: 312.8, Conduct Disorder, Childhood Onset Type; 307.7, Encopresis, diurnal type<br><br>Axis II: V62.89, Borderline Intellectual Functioning | Axis I: (311.00) Depressive Disorder NOS (not otherwise specified); (314.00) ADHD (Attention Deficit Hyperactivity Disorder – predominately problems with attention)<br><br>Axis II: (799.90) Deferred<br><br>Axis III: none<br><br>Axis IV: social & academic impairment<br><br>Axis V: current = 50 | Axis I: 1. Attention deficit and hyperactivity disorder.  2. Learning disability, NOS. 3. Oppositional defiant disorder.<br><br>Axis II: Deferred<br><br>Axis III: none<br><br>Axis IV: Educational & social problems.<br><br>Axis V: GAF: 50, serious.  Has attention deficit & currently is not getting along well with his classmates. |

The ALJ accorded weight to the medical opinions of the three doctors as follows:

Dr. Paris's opinion with regard to the claimant's intellectual functioning is given significant weight.  It is based on his clinical findings.  He reported that the claimant was cooperative.  There was no sign of hyperactivity or attentional difficulty in a one-on-one situation except toward the end of the testing.  Dr. Paris's opinion is supported by the opinion of the consultant psychiatrist, Dr. Dhir.

Dr. Dhir also noted that the claimant was pleasant and cooperative.  He found no evidence of thought disorder.  He

noted that the claimant's mood was euthymic and his emotional reactions were stable. Along with ADHD Dr. Dhir diagnosed learning disability and oppositional defiant disorder. In his opinion prognosis was good. Dr. Dhir's opinion is given significant weight since it was based on his clinical findings and is consistent with the opinion of Dr. Paris.

Significant weight is given to Dr. Biggs's diagnoses of depressive disorder and ADHD as well as a GAF of 50 since those diagnoses are consistent with the other evidence of record. However, his opinion that the claimant's illness is refractory is not given significant weight. He did not provide progress notes or clinical findings to support that opinion and it is not consistent with the opinion of Dr. Dhir, who thought that prognosis was good with continued medication and psychotherapy.

R. at 241.

The administrative record does not support the ALJ's assessment of these doctors' opinions. Specifically, the ALJ asserts that Dr. Paris' opinion is supported by the opinion of Dr. Dhir and that Dr. Dhir's opinion is consistent with Dr. Paris'. In reviewing each opinion there is a glaring inconsistency. In his report Dr. Paris stated, "[t]here was very little sign of attentional difficulties, and that only near the end of testing." R. at 211. In the summary portion of his report Dr. Paris wrote, "[a]lthough he has carried a diagnosis of ADHD, in the one-on-one situation of this examination, there was no indication of attentional difficulty or hyperactivity." R. at 212. In contrast, although Dr. Dhir, like Dr. Paris, found A.B. is not hyperactive, R. at 334, Dr. Dhir specifically found, as part of the Axis V diagnosis, "[t]he patient has an attention deficit. . . ." R. at 335. The ALJ omits to discuss this significant *inconsistency* between the opinions of Dr. Paris and Dr. Dhir.

Dr. Dhir's diagnosis of A.B. having *attention deficit* is consistent with Dr. Biggs' diagnosis of ADHD, "*predominately problems with attention*." R. at 323 (emphasis added). Their medical

findings are further substantiated by educational records.  An Individualized Education Program ("IEP") was approved for A.B. for the 6th grade, age 12.  R. at 338.  The IEP stated A.B. "should qualify for [Modified Maryland School Assessment aligned with Modified academic achievement standards in assessed grade] because of his poor focus and attention and his significant reading problems."  R. at 341.  This same IEP, in evaluating A.B.'s present level of academic achievement and functional performance, addressed how A.B.'s disability affects his involvement in the general education curriculum.  The assessment was that A.B.'s disability "interferes with his ability to concentrate on classroom assignments.  His poor focus affects his ability to read, write, and calculate math problems."  R. at 343.  The IEP further noted, "[A.B.] will need to use off grade level materials in the general education classroom and in the resource room."  R. at 348.  This use of "off grade level materials" will be daily.  The justification for this action is A.B. "reads and writes significantly lower[] tha[n] his same age peers.  While he will be exposed to grade level materials, he will need off grade level material to strengthen his basic skills."  *Id.*  This IEP, approved for A.B.'s 6th grade academic year, appears to be at odds with the ALJ's assessment that "A.B. has made significant improvement in the school year just past."  R. at 246.

The ALJ considered this IEP and summarized its content as follows:

> The claimant's IEP dated February 1, 2008, indicated that he would receive 20 hours of special education weekly (Exhibit 16F).  It was stated that he was doing better.  There were no significant interfering behaviors.  He had a strong desire to learn and do well but his poor focus affected his academic ability.  It was indicated that the claimant was reading and writing at a significantly lower level than his peers.  His attention span was short.  He performed best in a small group with minimal distractions.

R. at 240.

The educational records demonstrate that A.B. has difficulty acquiring and learning information and using the information that he has learned. This is reflected in his significantly lower reading levels (3rd and 4th grade although a 6th grade student) and the fact that the schools are providing him "off grade level materials" in an effort to strengthen his basic skills. Both Dr. Dhir and Dr. Biggs determined A.B. has significant attention deficit. The Social Security Regulations list, as an example of limited functioning in acquiring and using information, "You have difficulty recalling important things you learned in school yesterday." 20 C.F.R. § 416.926a(g)(3)(iii). During his evaluation Dr. Dhir found A.B. "was unable to recall *any objects* after 5 minutes." R. at 334 (emphasis added). The ALJ fails to address the medical diagnoses of attention deficit in relation to the February 1, 2008 IEP reflecting that, at age 12, A.B. still has significant problems with acquiring and using information. Thus the finding that A.B. has less than marked limitation in acquiring and using information is not supported by substantial evidence. Moreover, the ALJ *never* discussed A.B.'s limitation in acquiring and using information in relation to A.B.'s borderline intellectual functioning (per Dr. Paris' opinion which was accorded significant weight) or A.B.'s learning disability (per Dr. Dhir's opinion which was accorded significant weight).

*Attending and completing tasks*

With regard to this domain of functioning the ALJ wrote,

> The claimant has a diagnosis of ADHD. Ms. Holmes, the claimant's special education teacher in second and third grade, indicated in 2003 and 2004 that he had serious problems in focusing on tasks and finishing tasks on time. He received special education and individual therapy. In March 2007, the claimant's fifth-grade teacher, Ms. Favoreal stated that the claimant's attitude toward his work was inconsistent. Sometimes he was focused on his work but at other times he did not do what was expected of him.

Again, however, the claimant was not held back in the same grade because of academic failure, but was promoted to the next grade. By June 2007 Ms. Favoreal saw a noticeable improvement in the claimant's behavior, which was supported by his improved grades. Although Ms. Brown testified that the claimant is still inattentive and has poor focus, Dr. Paris, the consultant psychologist, noted very little sign of attentional difficulties in one-on-one testing. There has been improvement with the implementation of the IEP, small classes, medication, and therapy. The evidence shows that, while the claimant did have significant problems with focusing and concentration when he first began school, the problems were less than marked.

R. at 246-47.

Plaintiff argues the ALJ failed to address Dr. Dhir's and Dr. Biggs' opinions that A.B. has poor concentration, problems focusing and is easily distracted. Plaintiff further contends the ALJ assigns too much weigh to Dr. Paris' finding that in a one-on-one session, he observed no attentional difficulties by A.B. The Commissioner responds by noting that Dr. Dhir observed A.B. was not hyperactive and that Dr. Dhir opined A.B.'s prognosis was good, contrary to Dr. Biggs who opined A.B.'s illness was refractory in nature (and the ALJ gave no significant weight to this portion of Dr. Biggs' opinion because it was not supported by treatment notes).

Hyperactivity and attention deficit are <u>not</u> *identical* conditions. According to the *Diagnostic and Statistical Manual of Mental Disorders*, *inattention* may be manifested in social, occupational or academic situations.

Individuals with this disorder may fail to give close attention to details or may make careless mistakes in schoolwork or other tasks. Work is often messy and performed carelessly and without considered thought. Individuals often have difficulty sustaining attention in tasks or play activities and often find it hard to persist with tasks until completion. They often appear as if their mind is elsewhere or as if they are not listening or did not hear what has just been said. There may be frequent shifts from one uncompleted activity to another. Individuals diagnosed with this

disorder may begin a task, move on to another, then turn to yet something else, prior to completing any one task. They often do not follow through on requests or instructions and fail to complete schoolwork, chores, or other duties.

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 78 (4th ed. 1994) (citations omitted).

In contrast *hyperactivity* is manifested by other characteristics.

Hyperactivity may be manifested by fidgetiness or squirming in one's seat, by not remaining seated when expected to do so, by excessive running or climbing in situations where it is inappropriate, by having difficulty playing or engaging quietly in leisurely activities, by appearing to be often "on the go" or as if "driven by a motor" or by talking excessively.

*Id.* at 79 (citations omitted).

The fact that Dr. Dhir agreed with Dr. Paris that A.B. is not hyperactive is *irrelevant* to the determination of whether A.B. is *inattentive*.

The ALJ discounted Mrs. Brown's testimony of A.B.'s continued inattentiveness by relying on Dr. Paris' medical opinion noting "very little signs of attentional difficulties in one-on-one testing." R. at 247. The ALJ provides no explanation for completing ignoring <u>both</u> Dr. Dhir's and Dr. Biggs' medical opinions (which are both more recent that Dr. Paris' medical opinion) that A.B., in fact, has attention deficit. R. at 323, 335. And A.B.'s more recent school records substantiate these medical findings. For example, A.B.'s *Elementary Pupil Progress Report* for 5th grade documents that A.B. needs to improve completing school assignments and completing homework assignments under the areas of "Oral & Written Communication," "Mathematics," "Science" and "Social Studies." R. at 314. His 5th grade teacher, Ms. Favoreal,

commented, for three of the four quarters, that A.B.'s attitude towards school work is inconsistent. For the third quarter, ending March 27, 2007, Ms. Favoreal wrote,

> [A.B.]'s attitude towards work has been inconsistent. Sometimes, he is focused on his work; at other times, he does not bother doing what is expected of him. Similarly, there are times when he relates well with his classmates; oftentimes, he seems to be in constant arguments with the girls. There are moments when his disagreeable remarks are aimed at the teacher[.] This behavior is disruptive to class instruction. Let us continue to guide him.

R. at 315.

In his decision the ALJ noted A.B.'s behavior was noticeably improved by the end of the school year, as reflected in his grades. Ms. Favoreal's comments place these "achievements" in context.

> There has been a noticeable improvement in [A.B.]'s behavior this past marking period. He has become a bit patient with classmates, thereby avoiding arguments. Good job! [A.B.] has tried to do his work but his effort is not consistent. He needs to realize the importance of hard work in order to prepare him for the 6th grade. He has to continue reading every night at least twenty minutes and drills on the multiplication and division facts. His grades reflect accommodations and modifications based on his IEP.

*Id.*

The IEP approved for A.B.'s 6th grade year reflected ongoing issues with attention.

> *    [A.B.] should qualify for [Modified Maryland School Assessment aligned with Modified academic achievement standards in assessed grade] because of his poor focus and attention and his significant reading problems.
>
> *    [A.B.]'s disability of [Other Health Impaired] interferes with his ability to concentrate on classroom assignments. His poor focus affects his ability to read, write, and calculate math problems.

R. at 341, 343.

The Social Security Regulations provide a general description about *attention*.

> Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

20 C.F.R. § 416.926a(h)(1).

The Regulations further provide descriptors based on age groups. The administrative record covers A.B.'s life as a school age child, from age 6 to age 12. The descriptor for this age group, age 6 to the attainment of age 12, states,

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id.* § 416.926a(h)(2)(iv).

In his medical report Dr. Biggs noted, "At school, the patient has significant problems with focusing on his classwork. He seems to be easily distracted by others and by external stimuli." R. at 322. The Social Security Regulations list examples of limited functioning in

attending and completing tasks. Two of the examples are "You are easily started, distracted, or overreactive to sounds, sights, movements or touch" and "You repeatedly become side-tracked from your activities or you frequently interrupt others." 20 C.F.R. § 416.926a(h)(3)(i), (iii). Upon examination Dr. Dhir found A.B. has problems with concentration and memory. R. at 334. Dr. Dhir diagnosed A.B. with attention deficit. R. at 335.

The ALJ fails to address Dr. Dhir's and Dr. Biggs' medical diagnoses of attention deficit in relation to A.B.'s 5th grade report card as well as the February 1, 2008 IEP for the 6th grade reflecting that A.B. continues to have significant problems with attending and completing tasks. Thus the finding that A.B. has less than marked limitation in attending and completing tasks is not supported by substantial evidence.

_Interacting and relating with others_

With regard to this domain of functioning the ALJ wrote,

> The evidence shows that in first, second, and third grade, the claimant was disruptive at school and got into fights with other children. He punched a student in the face in September 2003. He was suspended three times in 2004 when he was in third grade. However, his anger was not uncontrollable. Dr. Paris noted in March 2004 that he was cooperative and responded to all questions asked. In March 2007 Ms. Favoreal stated that the claimant's behavior was still disruptive, but by June 2007 she saw a noticeable improvement in his behavior. He was avoiding arguments. The claimant stated at the hearing that he had not been in any fights this school year and that school was going well.

> Although the claimant had behavioral problems and problems with managing anger when he first began attending school, he was not unable to control his behavior. His limitations in interacting and relating with others were and are less than marked.

R. at 247-48.

Plaintiff challenges the ALJ's finding for the domain "caring for yourself." The Commissioner contends Plaintiff misunderstands the distinction between the related domains of "caring for yourself" and "interacting and relating with others." Def.'s Mem. at 22. Based on the arguments made by Plaintiff, it appears to the Court that the domain of "interacting and relating with others" is at the crux of Plaintiff's objections.

For this domain the Social Security Administration considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Dr. Dhir examined A.B. in February 2008 and determined A.B. has "poor social functioning." R. at 334. Under "Activities of Daily Living" Dr. Dhir recorded that A.B. has an anger management problem and described an incident where A.B. hit a girl while playing in her house and the police were called. *Id.* Dr. Dhir diagnosed A.B. with oppositional defiant disorder. R. at 335. Under "Prognosis" Dr. Dhir stated, "Patient should continue to receive medication management and also be in individual psychotherapy for his oppositional defiant disorder and difficulty in coping skills." *Id*

Dr. Dhir further elaborated about A.B's interacting and relating with others.

> Patient likes to play basketball and football. He plays on his own but is unable to participate in organized activities. . . Patient has 2 brothers who he fights with. He gets along with other family members. . . Patient has 1 friend who is a boy 11 years old and he does not get along with his classmates.

R. at 334.

Dr. Dhir diagnosed, for Axis IV, that A.B. has educational and social problems. R. at 335. Dr. Biggs similarly diagnosed, for Axis IV, that A.B. has a social and academic impairment. R. at 323.

A child of A.B.'s age group, age 6 to attainment of age 12, should exhibit the following characteristics of being able to interact and relate with others.

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Dr. Dhir examined A.B. approximately three months before the May 5, 2008 administrative hearing. Dr. Dhir's medical report demonstrates A.B. continues to have problems relating and interacting with others. The ALJ fails to address Dr. Dhir's findings, an opinion accorded significant weight by the ALJ.

Thus the finding that A.B. has less than marked limitation in interacting and relating with others is not supported by substantial evidence. Moreover, although the ALJ accorded significant weight to Dr. Dhir's opinion, the ALJ does not address Dr. Dhir's diagnosis of oppositional defiant behavior in relation to A.B.'s limitation in interacting and relating with others. Similarly, although "[s]ignificant weight is given to Dr. Biggs's diagnoses of depressive disorder and ADHD[,]" R. at 241, the ALJ does not address Dr. Biggs' diagnosis of depressive disorder in relation to A.B.'s limitation in interacting and relating with others.

5. **Conclusion.**

       Substantial evidence does not support the decision that A.B. is not disabled. Accordingly, the Plaintiff's Alternative Motion for Remand will be granted and Defendant's Motion for Summary Judgment will be denied.



Date: <u>December 22, 2010</u>          _____/s/_____
                                                       WILLIAM CONNELLY
                                       UNITED STATES MAGISTRATE JUDGE